Case No. SACV 11-0093 DOC (RZx)                                       Date: July 18, 2011

Title: STM GROUP, INC., ET AL. v. GILAT SATELLITE NETWORKS LTD

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

|  Julie Barrera  |  Not Present  |
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                  NONE PRESENT

PROCEEDING (IN CHAMBERS): GRANTING DEFENDANT'S MOTION TO DISMISS FOR
*FORUM NON CONVENIENS*

Before the Court is defendant Gilat Satellite Networks Ltd. ("Defendant" or "Gilat")'s Motion to Dismiss for *forum non conveniens* (Docket 12). The Court has considered the moving, opposing, replying, and supplemental papers, and GRANTS Defendant's Motion.

**I.    Background**

In analyzing this Motion to Dismiss for *forum non conveniens* ("Mot."), the Court accepts as true the facts alleged in Emil Youssefzadeh ("Mr. Youssefzadeh") and STM Group, Inc. ("STM") (collectively "Plaintiffs")'s Complaint ("Compl."). *See Carijano v. Occidental Petroleum Corp.*, 2011 WL 2138209, *1 (9th Cir. June 1, 2011) (citing *Vivendi SA v. T–Mobile USA, Inc.,* 586 F.3d 689, 691 n.3 (9th Cir. 2009)) (accepting the facts alleged in plaintiff's complaint when reviewing defendant's motion to dismiss for *forum non conveniens*).

Mr. Youssefzadeh is the president of STM, a corporation with its principal place of business in Orange County, California. Compl. ¶¶ 1, 21. Gilat is an Israeli corporation with its principal place of business in Petah Tikva, Israel. *Id.* at ¶ 3. STM and Gilat both deliver and install

satellite communication products in Peru.[1]

In 2009, the Peruvian government department known as EL MINISTERIO DE DEFENSA - Servicio de Comunicaciones del Ejército (the "Peruvian Army") sought to purchase a satellite communications system through a public tender. Compl. ¶ 8. A public tender is a bidding process in which companies submit competing bids in an attempt to obtain business activity; whichever company submits the lowest bid receives the job. In this case, STM and Gilat submitted bids to the Peruvian Army. *Id.* at ¶ 11. On August 3, 2009, STM won the public tender and entered into a contract with the Peruvian Army. *Id.* at ¶¶ 7-8. Pursuant to the contract, STM was to deliver and install satellite communications products in exchange for $5,572,000. *Id.* at ¶¶ 8-9. STM allegedly completed the delivery and installation on October 22, 2010, and final payment was due on or before November 21, 2010. *Id.* at ¶ 10.

Plaintiffs claim that Gilat was "extraordinarily angry" about losing the tender and "maliciously took steps with friends and officials inside the Peruvian Government to make sure STM [would] not be paid under the contract." *Id.* at ¶¶ 11-12. Plaintiffs claim that Gilat "engaged in a campaign of vicious rumors," including telling members of the Peruvian Government that STM illegally sold of MIG-29 fighter jets to Peru ten years earlier; that Gilat's bid was one million dollars less than STM's bid; and that Mr. Youssefzadeh was part of a mafia. *Id.* at ¶¶ 14-15. Consequently, Plaintiffs allege that Defendant intended and caused the Peruvian Army to breach their contractual duty and not pay Plaintiffs. *Id.* at ¶¶ 15-17. As of March 30, 2011, Plaintiffs have collected $3,280,000 from the Peruvian Army, leaving $2,290,000 of the contract price unpaid. Declaration of Emil Youssefzadeh in Support of Plaintiffs' Opp'n, ¶ 34.

Plaintiffs filed their Complaint in Superior Court on December 17, 2010, bringing two causes of action: Intentional Interference with Contract and Defamation (Docket 1). Defendant removed the action to this Court on January 19, 2011 and filed the present Motion to Dismiss for *forum non conveniens* on March 17, 2011 (Docket 12).

## II.   Legal Standard

The doctrine of *forum non conveniens* "is based on the inherent power of the courts to decline jurisdiction in exceptional circumstances." *Paper Operations Consultants Int'l, Ltd. v. S.S. Hong Kong Amber*, 513 F.2d 667, 670 (9th Cir. 1975). Such circumstances only exist when a defendant makes "a clear showing of facts which . . . establish such oppression and vexation of a

---

[1] Gilat owns a subsidiary, "Gilat to Home Peru S.A.," existing under the laws of Peru with its principal place of business in Lima, Peru. Declaration of Yair Shaharbany RJN in Support of Defendant's Mot., 4. Gilat owns another subsidiary called "Wavestream Corp." located in California. Compl. ¶ 3. Gilat is the only named defendant in this action.

defendant as to be out of proportion to plaintiff's convenience . . . ." *Cheng v. Boeing Co.,* 708 F.2d 1406, 1410 (9th Cir. 1983). Applying this standard, courts treat "*forum non conveniens* as an exceptional tool to be employed sparingly." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). Indeed, "[t]he doctrine of *forum non conveniens* is a drastic exercise of the court's "inherent power" because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case." *Carijano v. Occidental Petroleum Corp.*, 2011 WL 2138209, *4 (9th Cir. June 1, 2011).

Nevertheless, the District Court has wide discretion to apply the *forum non conveniens* doctrine where it sees fit. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). *See also Am. Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994) ("[W]here the [district] court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981))). "A citizen's forum choice should not be given dispositive weight. . . . [I]f the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Piper Aircraft,* 454 U.S. at 256 n.23; *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.*, 918 F.2d 1446, 1449 (9th Cir. 1990).

"To prevail on a motion to dismiss based upon *forum non conveniens,* a defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano*, 2011 WL 2138209 at *4 (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1117 (9th Cir. 2002)).

### III. Discussion

#### A. Adequacy of the Forum

"An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Carijano v. Occidental Petroleum Corp.*, 2011 WL 2138209, *4 (9th Cir. June 1, 2011) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). These requirements are assessed in turn.

##### 1. Service

Defendant asserts that it is amenable to process in Peru because it would consent to accept service in Peru. Mot. 9. Plaintiffs contend that this element is not satisfied because Defendant "provided no authority showing it is subject to Peruvian jurisdiction under the laws of Peru." Plaintiffs' Opposition ("Opp'n") 9.

A "voluntary submission to service of process" typically suffices to meet the first requirement for establishing an adequate alternative forum. *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006). *See also Carijano*, 2011 WL 2138209 at *4; *Gschwind v. Cessna*

*Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998) (citing *Piper Aircraft*, 454 U.S. at 254 n.22) (noting that submitting to service of process is "generally enough to make the alternative forum available"). Thus, Defendant satisfies the first requirement for establishing an adequate alternative forum.

## 2. Satisfactory Remedy

Dismissal for *forum non conveniens* is not appropriate "where the alternative forum does not permit litigation of the subject matter of the dispute," such that "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft,* 454 U.S. at 254 n.22. However, dismissal may occur "even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery . . . ." *Id. See also Carijano*, 2011 WL 2138209 at *4 (noting that the requirement for an alternative forum to provide "some remedy" is easily satisfied); *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001) ("[A] foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong.").

Defendant analogizes Plaintiffs' two causes of action—Intentional Interference with Contract and Defamation—with two Peruvian causes of action: Corporate Sabotage and Denigration.[2] Mot. 10. Plaintiffs do not contest the idea that Peru's Denigration cause of action provides an adequate remedy for their defamation claim. Plaintiffs do argue, however, that Peru's Corporate Sabotage claim is "different" than a California Intentional Interference with Contract claim. Opp'n 10. Specifically, Plaintiffs claim that "if STM prevailed [on its Corporate Sabotage claim], a fine would be paid to the Peruvian government, *not STM*." *Id.*

It is not necessary for an alternative forum to afford Plaintiffs the same causes of action or remedies as Plaintiffs' choice of forum. *See Lueck*, 236 F.3d at 1143 ("The foreign forum must provide the plaintiff with *some* remedy for his wrong in order for the alternative forum to be adequate." (emphasis added)); *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 769 (9th Cir. 1991) (holding that Japan was an adequate forum when plaintiff could bring tort and contract claims even though RICO and Lanham Act claims were unavailable). Peru's law, like California's, allows a plaintiff to pursue a claim against one who intentionally interferes with contractual relationships. Corporate Sabotage is defined in Peru as "acts, the real or potential effect of which is . . . interference in [a] contractual relationship . . . ." Nunez Decl., Ex. 6. The initial remedy for a Corporate Sabotage claim does appear to be a fine paid to the Peruvian government. Opp'n 10. However, Defendants emphasize that plaintiffs who succeed in Corporate Sabotage claims may obtain indemnification to receive compensatory, injunctive, and declaratory relief. Defendant's Reply to Plaintiffs' Opp'n ("Reply") 9; Mot. 7. It would therefore be possible—albeit a longer process—for Plaintiffs to recover

---

[2]Peruvian law defines denigration as "acts, the real or potential effect of which, either directly or by implication, is to damage the image, credit, fame, prestige, or entrepreneurial or professional reputation of another or other economic agent(s)." Declaration of Diez-Canesco Nunez ("Nunez Decl."), Ex. 6 (Docket 16).

several types of relief. Thus, Peruvian law provides Plaintiffs with "some remedy" that is not "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft,* 454 U.S. at 254.

Plaintiffs also argue that Peru is an inadequate forum because it "does not provide parties with the right to propound interrogatories, requests for admission or document requests, or to take pre-trial depositions directly," so that Plaintiffs could not "possibly prove their claims." Opp'n 10. As Defendant points out, however, Peruvian courts do provide opportunities to conduct discovery. Courts have the ability to subpoena and compel witness testimony and document production, and parties are able to appeal a court's discovery decisions. Mot. 10. Notably, this District has previously held that a forum which denies plaintiffs the right to propound interrogatories, requests for admission, or document requests, or to take pretrial depositions can still be adequate when the alternative forum retains power to subpoena witnesses and compel limited discovery. *See In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1187 (C.D. Cal. 2004) (holding that Taiwan was an adequate forum where Taiwan courts had the power to subpoena witnesses and compel limited discovery during trial, even though parties could not propound interrogatories, requests for admission, or document requests, nor take pretrial depositions). Although Peru does not offer Plaintiffs an identical version of discovery to the United States federal system, it does provide Plaintiffs with adequate opportunity to litigate.

As Plaintiffs' final adequacy challenge, Plaintiffs contend that Peru is an inadequate forum because of government corruption in Peru. Opp'n 10. A recent Ninth Circuit decision examined similar corruption allegations about Peru. *See Carijano*, 2011 WL 2138209. In *Carijano*, several Peruvian plaintiffs and one California plaintiff sued a California-based oil company in California federal court. *Id.* at *9. The plaintiffs opposed the defendant's motion to dismiss for *forum non conveniens* by arguing that the "Peruvian judiciary suffers from 'institutionalized' corruption, including widespread lobbying of justices . . . ." *Id.* at *6. In response, the defendant described "efforts by the Peruvian government to fight corruption that have included the removal and sanctioning of numerous judges . . . ." *Id.* Although the defendant's motion was eventually denied for other reasons, the Ninth Circuit concluded that Peru was an adequate forum because plaintiffs' evidence was "too generalized and anecdotal" to demonstrate a "powerful showing" of corruption. *Id.* Although not dispositive, other courts have similarly held that Peru is an adequate forum. *See Flores v. S. Peru Copper Corp.*, 253 F. Supp. 2d 510 (S.D.N.Y. 2002), *aff'd*, 414 F.3d 233 (2d Cir. 2003); *Torres v. S. Peru Copper Corp.*, 965 F. Supp. 899 (S.D. Tex. 1996), *aff'd*, 113 F.3d 540 (5th Cir. 1997).

In contrast to the "generalized and anecdotal" allegations of corruption put forth in *Carijano*, Plaintiffs claim to offer "concrete evidence" that Gilat has "tremendous influence with the Peruvian government . . . ." Opp'n 2. Specifically, Plaintiffs point to a 2001 incident in which Gilat allegedly bribed Peruvian public officials to deprive Plaintiff's predecessor of a similar satellite communications contract awarded through public tender as purported evidence of corruption. *Id.* Plaintiffs support this allegation with an email discussing a $120,000 dollar payment "supposedly oriented to Government Officials as part of an 'under the table payment' for help in getting the Project." Opp'n RJN Ex. A, 27. Plaintiffs rely on this email to suggest that "Gilat will not hesitate to

bribe Peruvian government officials" and "will use its political influence to bury this case without a fair hearing." Opp'n 1, 10-11. Plaintiffs argue that "there is nothing to suggest Gilat does business differently today." Opp'n 11. Plaintiffs sued Gilat over the 2001 incident, and the parties settled the case in 2003. Opp'n RJN Ex. A, ¶ 61.

To demonstrate that a foreign forum is inadequate due to corruption, Plaintiffs must make a "powerful showing," including specific evidence. *Carijano*, 2011 WL 2138209 at *5 (citing *Tuazon*, 433 F.3d at 1179) (emphasizing that very few courts hold that alternative forums are inadequate because of corruption). Plaintiffs' argument challenging a forum on the basis of corruption "does not enjoy a particularly impressive track record." *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997). To be sure, Plaintiffs' proffered email is more concrete evidence than a broad assertion that the "Peruvian judiciary suffers from 'institutionalized' corruption." *Carijano*, 2011 WL 2138209 at *5.

Nonetheless, Plaintiffs' ten-year-old email fails to demonstrate that the Peruvian "legal system is so fraught with corruption, delay and bias as to provide 'no remedy at all.'" *Tuazon*, 433 F.3d at 1179 (quoting *Piper Aircraft*, 454 U.S. at 254). Plaintiffs have only offered evidence of one alleged bribery that occurred ten years ago. More importantly, Plaintiffs fail to offer any evidence suggesting corruption within the Peruvian *judiciary*. Though evidence of an alleged bribery may shed doubt on Gilat's business practices, there is nothing in the record to suggest that Gilat's alleged willingness to bribe Peruvian officials, whether ten years ago or today, would have any effect on Plaintiffs' ability to receive a remedy in Peruvian courts at the present time. Thus, Plaintiffs' evidence does not amount to a "powerful showing" of Peruvian corruption. *See Carijano*, 2011 WL 2138209 at *5.

The Court further recognizes that when scrutinizing a foreign forum's adequacy, it is important to avoid "unnecessary indictments by our judges condemning the sufficiency of the courts and legal methods of other nations." *Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 158 F. Supp. 2d 377, 385 (S.D.N.Y. 2001); *see also Carijano*, 2011 WL 2138209 at *5. For all these reasons, the Court finds that Peru is an adequate alternative forum.

### B. Balance of Private and Public Interest Factors

When a plaintiff chooses to litigate in its home forum, there is a "strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft*, 454 U.S. at 255. "Greater deference is due because 'a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown.'" *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984) (citing *Piper Aircraft,* 454 U.S. at 255 n.23). However, "a United States citizen has no absolute right to sue in a United States court." *Mizokami Bros. of Arizona, Inc. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir. 1977) (holding that the District Court properly dismissed a case for *forum non conveniens* despite the fact that plaintiff filed suit in its home forum of Arizona).

Plaintiffs' choice of forum in this case is afforded substantial deference because Plaintiffs filed this action in California. In order to overcome this deference, Gilat must establish that hearing this action in a California forum "results in 'oppressiveness and vexation . . . out of proportion' to the plaintiff's convenience." *Carijano*, 2011 WL 2138209 at *6 (citing *Piper Aircraft*, 454 U.S. at 241). The Court finds that it has done so.

### 1. Private Interest Factors

The factors relating to the private interests of the litigants include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1206-07 (9th Cir. 2009) (quoting *Lueck*, 236 F.3d at 1145). "In applying these factors, 'the district court should look to any or all of the above factors which are relevant to the case before it, giving appropriate weight to each.'" *Tuazon*, 433 F.3d at 1180 (quoting *Lueck*, 236 F.3d at 1145).

#### a. Residence of Parties

When evaluating the private interest factors, the Ninth Circuit Court of Appeals recently highlighted the importance of considering "the residence of all of the parties and the true nature of Plaintiffs' claims." *Carijano*, 2011 WL 2138209 at *9. In *Carijano*, one Plaintiff resided in the forum state of California. *Id.* The Court noted that the plaintiffs' choice of forum was presumptively convenient because plaintiffs filed the action in their home forum. *Id.* The Court also considered the fact that the defendant, moving to dismiss the case from California, was itself a California corporation. *Id.* As a result, the Court found that the "residence of the parties" factor weighed against dismissal. *Id.*

Regarding the true nature of the plaintiffs' claims, the Court in *Carijano* also found that "[m]ost of Plaintiffs' claims turned not on the physical location of the injury but on the mental state of the [defendant's] managers who actually made the business decisions that allegedly resulted in the injury." *Id.* In other words, the claims in *Carijano* involved conduct "based on decisions made in and policies emerging from [defendant's] headquarters" in California. *Id.* Because the "decisionmakers" and "witnesses with knowledge of [the defendant's Peruvian subsidiary's] operations" were based in California, evidentiary and convenience factors weighed against dismissal. *Id.*

In this case, Plaintiffs argue that "it is hard to suggest that Peru would be a more convenient forum than California" because "all parties are prominently based in California." Opp'n 13. Plaintiffs emphasize that both STM and Mr. Youssefzadeh are residents of California, and Gilat has "substantial operations" in California. *Id.* Unlike the defendant in *Carijano*, however, Gilat does not have its headquarters in California; Gilat is a resident of Israel and merely owns a subsidiary in California that is unrelated to this case. *See Meridian Seafood Products, Inc. v. Fianzas Monterrey*,

*S.A.*, 149 F. Supp. 2d 1234, 1238 (S.D. Cal. 2001) (finding that ownership of an American subsidiary corporation "has little bearing on the *forum non conveniens* analysis"). Nevertheless, the fact that neither party is based in Peru causes the "residence of parties" factor to weigh against dismissal.

### b. Evidentiary and Convenience Considerations

Courts must also "evaluate the materiality and importance of the anticipated . . . witnesses' testimony and then determine their accessibility and convenience to the forum." *Boston Telecomms.,* 588 F.3d at 1209 (quoting *Lueck,* 236 F.3d at 1146).

Plaintiffs contend that "primary . . . witnesses will be in the possession of Gilat and STM," and, therefore, this action should remain in California. Opp'n 13. Plaintiffs suggest that Gilat's "substantial operations in California" allow it to designate employees to "sit for a deposition in California." *Id.* Notably absent from Plaintiffs' Opposition is any reference to specific witnesses, other than Mr. Youssefzadeh, who reside in California. Plaintiffs' Complaint does, however, reference several people who would likely be primary witnesses in this suit, including Gilat's "friends and officials within the Peruvian government;" "members of the Peruvian Government, military and congress and the press" to whom Gilat allegedly told false statements; and "powerful and influential members of the Peruvian military, government and other public officials" whom Gilat allegedly convinced not to pay Plaintiffs. Compl. ¶¶ 13, 14, 22. All of these witnesses reside in Peru.

Defendant's witnesses are also located in Peru. Defendant claims that it intends to present evidence from Peru to contradict Plaintiffs' defamation allegations, including the testimony of Cesar Pereira, an author for a Peruvian newspaper that published the allegedly false statements about Plaintiffs. Mot. 14. Defendant also contends that it will require the testimony of "members of the Peruvian Army with direct knowledge of STM's installation of specific satellite communications equipment" to demonstrate why the Peruvian Army decided not to pay Plaintiffs and whether Defendant induced Peruvian officials to break their contractual duties. *Id.* These witnesses also reside in Peru.

Clearly, several witnesses in Peru are material to Plaintiffs' claims and Defendant's defenses: members of the Peruvian Army and Peruvian government officials to testify about STM's Intentional Interference with Contract claim, and Peruvian press to testify about Mr. Youssefzadeh's defamation claims. The Ninth Circuit has indicated that "the initial question is not whether the witnesses are beyond the reach of compulsory process, but whether it has been alleged or shown that witnesses would be unwilling to testify." *Carijano*, 2011 WL 2138209 at *10. Defendant alleges that it is "unlikely" that such witnesses would testify voluntarily. Mot. 15. Because this case involves allegations that Peruvian officials are corrupt, Defendant's predictions seem probable. More importantly, Peru is not a signatory to the Hague Convention, which allows signatories to obtain letters rogatory to compel testimony of foreign witnesses. Mot. RJN Ex. H, 25. As a result, should this action take place in California, there is no assurance that the parties will be able to compel testimony of Peruvian witnesses. Even assuming that Plaintiffs will be able to produce sufficient evidence to

succeed on their claims in California, it is unlikely that Defendant will be able to sufficiently defend itself. Forcing Gilat to litigate a suit under such circumstances is oppressive.

Considerations of physical evidence also weigh in favor of dismissal. Plaintiffs make the conclusory statement that "the primary documentary evidence should be in the possession of [STM and Gilat]." Opp'n 13. Indeed, many emails, contracts, or documents relating to this action, though in Peru, are within Gilat's possession. However, as Defendant argues, "[t]he physical satellite communication installations that STM provided to the Peruvian Army under the contract, which would be material evidence of STM's performance or lack thereof, are all located in Peru." Mot. 17. Thus, considerations of physical evidence also weigh in favor of dismissal.

Furthermore, unlike in *Carijano*, Plaintiffs' claims relate only to conduct that occurred in Peru. Although "[t]he mere fact that a case involves conduct or plaintiffs from overseas is not enough for dismissal," the fact that all relevant conduct took place in Peru bolsters the Court's confidence that key witnesses and physical evidence are located in Peru. *Carijano*, 2011 WL 2138209 (citing *Tuazon* 433 F.3d 1163, 1181-82). *See also Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 659 (9th Cir. 2009) (holding that dismissal for *forum non conveniens* was appropriate where plaintiff was a resident of the forum state, but all alleged conduct took place in Mexico); *Mizokami Bros.*, 556 F.2d at 978 (same). Because physical evidence and all identified material witnesses, with the exception of one, are located in Peru, the evidentiary and convenience factors strongly weigh in favor of dismissal. *See Loya* 583 F.3d at 664-66 (affirming the District Court's dismissal for *forum non conveniens* where most witnesses and relevant documentation were located in Mexico); *Contact Lumber*, 918 F.2d at 1451 (affirming the District Court's dismissal for *forum non conveniens* where plaintiff was an American corporation, but evidence and witnesses were located in the Philippines).

### c.     Enforceability of the Judgment

Courts will find the enforceability of the judgment factor to weigh against dismissal if the defendant does not meet its burden of establishing sufficient assets in the foreign jurisdiction to satisfy a judgment. *See, e.g., Carijano*, 2011 WL 2138209 at *11; *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*, 955 F.2d 368, 375 (5th Cir. 1992). Plaintiffs contend that "[i]t is unclear what assets Gilat would have to levy upon in Peru," and, as a result, no judgment could be satisfied there. Opp'n 14. In Defendant's Reply, however, Defendants demonstrate that Gilat's Peruvian subsidiary has at least three times as many assets than the $2,290,000 Plaintiffs have yet to recover from the Peruvian Army. Reply 16. Though the amount of damages sought by Plaintiffs is certainly high, the Court nonetheless has little concern about the enforceability of a Peruvian judgment. To be sure, as the Court will describe later, the Court sees fit to condition this dismissal on Plaintiffs' ability to enforce a Peruvian judgment against Gilat. Thus, this factor does not weigh against dismissal.

### 2.     Public Interest Factors

The public factors to consider in a *forum non conveniens* analysis include: "(1) the local

interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum." *Boston Telecomms.*, 588 F.3d at 1211 (quoting *Tuazon*, 433 F.3d at 1181).

The local interest factor helps determine "if the forum in which the lawsuit was filed has its own identifiable interest in the litigation which can justify proceeding in spite of these burdens." *Carijano*, 2011 WL 2138209 at *12. "There can be no question that the local interest factor weighs in favor of a California forum where a California plaintiff is suing a California defendant over conduct that took place in the state." *Id.* This is largely because states have an "interest in deciding actions against resident corporations whose conduct in this state causes injury to persons in other jurisdictions." *Stangvik v. Shiley Inc.*, 819 P.2d 14, 21 n.10 (Cal. 1991). Here, however, Defendant is an Israeli corporation and all allegedly harmful conduct took place in Peru. Thus, California's present interest in preventing further harmful conduct in its state is minimal. *See Guimei v. Gen. Elec. Co.*, 91 Cal. Rptr. 3d 178, 190 (Cal. App. 2009) (holding that where defendants were not California corporations, California "has little interest in keeping the litigation in this state to deter future wrongful conduct"). Finally, the minimal interest California has in hosting this action is outweighed by Peru's substantial interest; because Plaintiffs' claims involve allegations of government corruption, Peru surely has the greatest interest in investigating Plaintiffs' claims and hosting this action.

Taken together, the private and public factors "establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience." *Piper*, 454 U.S. at 241. All but one of the material witnesses are located in Peru, as is pertinent physical evidence. Transporting evidence of the installed satellite communications system, as well as members of the Peruvian Army, government, and press from Peru to California would be extremely inconvenient and expensive, if not impossible. However, such evidence is likely necessary for Plaintiffs to prove their claims and for Defendant to defend itself. California has a minimal interest in keeping this action in its courts because all alleged wrongful conduct occurred abroad by a foreign defendant. Therefore, the private and public interest factors support dismissal.

### C. Conditions

The Ninth Circuit recently criticized a district court's dismissal for *forum non conveniens* without imposing any mitigating conditions. *See Carijano*, 2011 WL 2138209 at *14 ("District courts are not required to impose conditions on *forum non conveniens* dismissals, but it is an abuse of discretion to fail to do so when 'there is a justifiable reason to doubt that a party will cooperate with the foreign forum.'" (quoting *Leetsch v. Freedman*, 260 F.3d 1100, 1104 (9th Cir. 2001))).

The Court requested supplemental briefing on the appropriate conditions it should consider (Docket 37). After reviewing the parties' briefs, the Court imposes the conditions listed below, which it believes will adequately protect Plaintiffs' ability to litigate this action.

### IV. Disposition

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss for *forum non conveniens*. The Court's dismissal is subject to the following conditions:

(1) Defendant's agreement to

    (a) submit to jurisdiction in Peruvian courts;

    (b) waive any statute of limitations defense it might raise;

    (c) make available any evidence and witnesses within its control that Peruvian courts properly deem discoverable and relevant; and

    (d) enforce any judgment awarded by Peruvian courts; and

(2) A Peruvian court's acceptance of jurisdiction over Plaintiffs' claims.

Defendant's motion to dismiss pursuant to Federal Rule 12(b)(6) (Docket 18) is DENIED as MOOT.

The Clerk shall serve this minute order on all parties to the action.